No. 107,680

In the Matter of Uzo L. Ohaebosim, *Respondent*.

(279 P.3d 124)

Opinion filed June 29, 2012.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*G. Craig Robinson*, of Wichita, argued the cause, and *Uzo L. Ohaebosim*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Uzo L. Ohaebosim, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 2003.

The office of the Disciplinary Administrator filed a formal complaint against the respondent on August 8, 2011, alleging violations of the Kansas Rules of Professional Conduct (KRPC). That office filed an amended formal complaint on September 29, 2011, which the respondent answered on October 4, 2011. A panel of the Kansas Board for Discipline of Attorneys conducted a hearing on the complaint on October 13, 2011, at which the respondent appeared in person and by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2011 Kan. Ct. R. Annot. 416) (competence); 1.3 (2011 Kan. Ct. R. Annot. 433) (diligence); 1.4(a) (2011 Kan. Ct. R. Annot. 452) (communication); 1.15(b) (2011 Kan. Ct. R. Annot. 519) (safekeeping property); 1.16(d) (2011 Kan. Ct. R. Annot. 535) (termination of representation); 8.1(b) (2011 Kan. Ct. R. Annot. 609) (failure to respond to lawful demand for information from disciplinary authority); Kansas Supreme Court Rules 207(b) (2011 Kan. Ct. R. Annot. 314) (failure to cooperate in disciplinary investigation); and 211(b) (2011 Kan. Ct. R. Annot. 334) (failure to file answer in disciplinary proceeding).

At the conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

### "*DA10361, DA10503, and DA10686*

"11.    On December 23, 2009, the Respondent entered into the attorney diversion program, pursuant to Kan. Sup. Ct. R. 203(d). In the diversion agreement, the Respondent stipulated to the following facts:

#### 'DA10,361

'a. Respondent was in a firm.

'b. [W.B.] had a lien placed on them for proceeds in a workers' compensation case.

'c. Payment of the funds was delegated to a non-lawyer staff member who paid the funds to the client, not to the lien holder.

'd. The funds were kept in a bank account that was not designated as a trust account.

'e. The firm paid over $6,000 to the lien holder.

#### 'DA10,503

'a. Respondent and his partner, Lawrence Williamson, filed a sexual harassment claim against the Wichita State University Police Department on behalf of [K.D.J.].

'b. The suit did not survive summary judgment.

'c. The court ruled that Wichita State University was immune to the state court claims and the conduct complained of was not "sever [*sic*] and pervasive."

'd. Respondent was the primary attorney on the case.

'e. In the middle of the case, Williamson left the firm to open a new practice in a different city.

'f. Complainant had difficulty getting her file delivered to her after the case was dismissed.

#### 'DA10,686

'a. Respondent was retained to represent [D.B.] Complainant in an age discrimination case against a nursing home that had discharged Complainant.

'b. Respondent filed the case in federal court.

'c. The case was dismissed on a summary judgment motion in September 2008.

'd. Complainant had difficulty locating Respondent during the pendency of her case.

'e. Respondent did not tell Complainant he had moved offices.

'f. Respondent did not promptly tell Complainant the case had been dismissed.

'g. Complaint did not get all of her documents returned to her.

'h. Respondent did not fully cooperate with the investigation.'

"12. Additionally, in the diversion agreement, the Respondent agreed that he violated KRPC 1.1, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, and Kan. Sup. Ct. R. 207.

"13. The Respondent failed to comply with the terms of the diversion agreement. The Respondent failed to have quarterly audits of his files completed by the practice supervisor. The Respondent failed to provide written office procedures. The Respondent failed to pay the required diversion fees. Finally, the Respondent failed to provide the Disciplinary Administrator with his new address as required by the diversion agreement.

"14. The Respondent's diversion agreement contained the following provision:

'If the Respondent fails to comply with any of the terms and conditions of diversion, the Disciplinary Administrator may extend the term of the Diversion Agreement, otherwise modify the Diversion Agreement, or report such compliance to the Review Committee. The Review Committee may order that the Respondent be informally admonished or that the matter be set for a Formal Hearing before a Hearing Panel. *See* Kan. Sup. Ct. R. 203(d)(2)(vii).'

"15. The Deputy Disciplinary Administrator reported the Respondent's violation of the terms of the diversion agreement to the Review Committee and the Review Committee directed that DA10361, DA10503, and DA10686, be set for a formal hearing before a Hearing Panel.

"16. On October 8, 2008, the Kansas Supreme Court entered an order suspending the Respondent's license to practice law in the State of Kansas for failing to pay the annual attorney registration fee. Thereafter, the Respondent paid the annual attorney registration fee. On December 10, 2008, the Kansas Supreme Court reinstated the Respondent's license to practice law.

"17. On October 18, 2010, the Kansas Supreme Court again entered an order suspending the Respondent's license to practice law in the State of Kansas for failing to pay the annual attorney registration fee. Subsequently, the Respondent paid the annual attorney registration fee. On May 12, 2011, the Kansas Supreme Court reinstated the Respondent's license to practice law. Throughout the period of suspension, the Respondent practiced law in violation of the order of the Kansas Supreme Court.

"*DA11136*

"18. [E.M.] retained the Respondent to represent him in a removal case before the immigration court in Kansas City. The Respondent entered his appearance in behalf of Mr. [M.].

"19. On April 23, 2010, Mr. [M.] appeared in immigration court as ordered. The Respondent, however, failed to appear in court with Mr. [M.]. The immigration judge attempted to contact the Respondent by telephone. However, the judge was unable to reach the Respondent. After the hearing, the immigration judge ordered Mr. [M.] to voluntarily depart the United States within 120 days.

"20.    Mr. [M.] retained Matthew Hoppock to appeal the immigration court's decision. In order to file an appeal, Mr. Hoppock needed to obtain the Respondent's file regarding Mr. [M.].

"21.    On May 6, 2010, Mr. Hoppock called the Respondent and left a detailed message, requesting Mr. [M.'s] file. That same day, Mr. Hoppock sent the Respondent a letter requesting that the Respondent provide the original case file to Mr. Hoppock. Mr. Hoppock enclosed an original waiver and release executed by Mr. [M.]. Finally, Mr. Hoppock also sent the Respondent an electronic mail message requesting that the Respondent forward Mr. [M.'s] file to Mr. Hoppock.

"22.    The Respondent did not respond to any of Mr. Hoppock's initial inquiries.

"23.    On June 4, 2010, Mr. Hoppock called the Respondent. Mr. Hoppock received a recorded message that the Respondent's voice mail box was full. That same day, Mr. Hoppock sent the Respondent a second letter and a second electronic mail message, requesting that the Respondent forward his file regarding Mr. [M.] to Mr. Hoppock.

"24.    The Respondent replied to the electronic mail message, acknowledging Mr. Hoppock's May communications. The Respondent agreed to provide an electronic copy of Mr. [M.'s] file within 24 hours. The Respondent failed to provide Mr. [M.'s] file as promised.

"25.    On June 6, 2010, the Respondent informed Mr. Hoppock that he would not be able to access Mr. [M.'s] file until June 19, 2010.

"26.    In early July 2010, Mr. Hoppock received a compact disc with 8 pages. On July 10, 2010, Mr. Hoppock detailed what he had received and also detailed what he needed to receive from the Respondent. The Respondent never provided any additional documentation to Mr. Hoppock. Mr. Hoppock was required to represent Mr. [M.] without the benefit of the Respondent's complete file.

## "CONCLUSIONS OF LAW

"27.    Based upon the findings of fact and the Respondent's stipulation made in the diversion agreement, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211, as detailed below. [Footnote: The Respondent stipulated to a violation of KRPC 1.5 (unreasonable fees) in the diversion agreement. However, the facts included do not support a conclusion that the Respondent violated KRPC 1.5. Accordingly, the Hearing Panel dismisses the allegation that the Respondent violated KRPC 1.5.]

"28.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to employ the requisite thoroughness and preparation in his representation of Mr. [M.]. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"29.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent Mr. [M.] by failing to appear in court as directed. Because the Respondent failed to act with reasonable diligence and promptness in representing his client, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"30.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to adequately communicate with Ms. [B.]. The Respondent failed to inform Ms. [B.] that he moved his office and that her case had been dismissed. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"31.     Lawyers must deal properly with the property of their clients. Specifically, KRPC 1.15(b) provides:

'(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

The Respondent violated KRPC 1.15(b) when he failed to notify the workers' compensation carrier that he had received settlement funds and when he failed to properly distribute the settlement funds regarding Mr. [B.]. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15(b).

"32.     KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The Respondent violated KRPC 1.16(d) when he failed to return Ms. [J.'s] file to her, when he failed to return Ms. [B.'s] documents to her, and when he failed to properly forward Mr. [M.'s] file to Mr. Hoppock. The Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.16(d).

"33.     Lawyers must cooperate in disciplinary investigations.

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to timely forward a written response to Ms. [B.'s] complaint. Because the Respondent knowingly failed to provide a timely written response to the initial complaint filed by Ms. [B], the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"34.   The Kansas Supreme Court rules require attorneys to file an answer to formal complaint. Kan. Sup. Ct. R. 211(b) provides the requirement:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the formal complaint and by failing to file a timely written answer to the amended formal complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"35.   In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"36.   *Duty Violated*. The Respondent violated his duties to his clients to provide adequate communication and to properly safeguard, distribute, and return property. Further, the Respondent violated his duties to the profession to cooperate in disciplinary investigations and to comply with the rules of the court by paying the annual attorney registration fees.

"37.   *Mental State*. The Respondent knowingly violated his duties.

"38.   *Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to his clients and to the legal profession.

"39.   *Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"40.   *Prior Disciplinary Offenses*. The Kansas Supreme Court has previously suspended the Respondent's license to practice law twice for failing to pay the annual registration fee. Additionally, the Respondent practiced law during the period of suspension, in violation of the order of suspension.

"41.   *A Pattern of Misconduct*. The Respondent engaged in a pattern of misconduct. The Respondent violated the Kansas Rules of Professional Conduct in four separate cases. Some of the misconduct was similar in nature. Accordingly, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"42. *Multiple Offenses.* The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211. As such, the Hearing Panel concludes that the Respondent committed multiple offenses.

"43. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent engaged in a bad faith obstruction of the disciplinary proceeding by failing to timely answer Ms. [B.'s] complaint and by failing to timely file an answer to the formal complaint and the amended formal complaint. The Hearing Panel concludes that the Respondent's obstruction of the disciplinary proceeding is an aggravating factor in this case.

"44. *Vulnerability of Victim.* Mr. [M.] and the other clients were vulnerable to the Respondent's misconduct.

"45. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"46. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent enjoys the respect of his friends and peers as evidenced by the letters offered and received as Respondent's Exhibit A.

"47. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'6.22    Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"48. The Disciplinary Administrator recommended that the Respondent be suspended for no more than a year and that the Respondent undergo a reinstatement hearing so that the Respondent can have a plan of probation in place that would address his difficulties. Counsel for the Respondent suggested that the

appropriate discipline would be something less than a suspension. Counsel for the Respondent also suggested that the Hearing Panel could develop a plan of probation *sua sponte* and place the Respondent on probation.

"49. Kan. Sup. Ct. R. 211(g) provides responding attorneys with an opportunity to develop a plan of probation in advance of attorney disciplinary hearings. The Respondent failed to comply with the rule. Further, the rule does not allow the Hearing Panel to develop a plan of probation for the Respondent and place him on probation pursuant to the plan. As such, probation is no longer an option for the Respondent in this case.

"50. The Hearing Panel is concerned by the Respondent's misconduct as well as his approach to the attorney disciplinary case. First, the Respondent practiced law in violation of the Kansas Supreme Court's order suspending the Respondent's license. Second, the Hearing Panel had the opportunity [to] observe the Respondent during the hearing. The Respondent appeared to the Hearing Panel unconcerned about the pending attorney disciplinary case. Finally, the Disciplinary Administrator worked out a diversion agreement for the Respondent regarding the first three disciplinary complaints. The Respondent failed to take advantage of this opportunity by complying with the diversion agreement. Conversely, the Respondent's total disregard to his obligations under the diversion agreement clearly establish the Respondent's lack of interest in doing what it takes to be an attorney in good standing in Kansas.

"51. Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of six months. The Hearing Panel further recommends that the Respondent undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219.

"52. Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent filed no exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2011 Kan. Ct. R. Annot. 352). Those admitted facts support the hearing panel's conclusions of law, and we therefore adopt the panel's findings and conclusions. Thus, the only issue before us is the appropriate discipline.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended for no less than 1 year and that he undergo a reinstatement hearing. The respondent requested something less than a suspension; he also suggested a hearing panel-developed probation plan. The hearing panel recommended that respondent be suspended from the practice of law for a period of 6 months and undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219 (2011 Kan. Ct. R. Annot. 380).

"The recommendation of the panel or the Disciplinary Administrator as to sanctions to be imposed shall be advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator." Supreme Court Rule 212(f) (2011 Kan. Ct. R. Annot. 353).

Here, the respondent's failure to take advantage of the diversion agreement and his substantial disregard of his obligations under that agreement, as well as the seriousness of respondent's misconduct during the pendency of the diversion agreement, convince this court that the panel's recommended 6-month suspension is an insufficient sanction in this case.

Accordingly, we find the appropriate sanction is a 1-year suspension from the practice of law, to commence upon the filing of this opinion.

## Conclusion and Discipline

It Is Therefore Ordered that Uzo L. Ohaebosim be suspended for 1 year from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2011 Kan. Ct. R. Annot. 280).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379).

It Is Further Ordered that the respondent must undergo a Supreme Court Rule 219 (2011 Kan. Ct. R. Annot. 380) hearing before the court will consider any readmission of the respondent to the practice of law in Kansas.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas reports.